1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

AVREY D. S.,

CASE NO. 3:22-CV-5813-DWC

11

Plaintiff,

12

v.

ORDER AFFIRMING DEFENDANT'S
DECISION DENYING BENEFITS

13

COMMISSIONER OF SOCIAL
SECURITY,

14

Defendant.

15

16

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial

17

of his applications for disability insurance benefits (DIB) and social security insurance (SSI)

18

benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties

19

have consented to proceed before the undersigned. After considering the record, the Court finds

20

no reversable error and affirms the Commissioner's decision to deny benefits.

21

**I. BACKGROUND**

22

Plaintiff filed applications for DIB and SSI in October 2019 alleging he became disabled

23

on October 1, 2018, when he was 19 years old. Administrative Record (AR) 15. His applications

24

were denied initially and on reconsideration, and again after a hearing was held before and

1  Administrative Law Judge (ALJ) on August 31, 2021 at which Plaintiff was represented by an

2  attorney and testified. AR 12-31; 32-53. The Appeals Council then denied Plaintiff's request for

3  review, making the ALJ's decision final. AR 1-6; 20 C.F.R. §§ 404.981, 416.1481.

## II. STANDARD

4

5       Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of

6  social security benefits if the ALJ's findings are based on legal error or not supported by

7  substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

8  Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

9  Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

10 harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

11 2008).

12      Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of*

13 *Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The Supreme Court describes it as "more

14 than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means

15 only—such relevant evidence as a reasonable mind might accept as adequate to support a

16 conclusion." *Id*. (internal quotations omitted).

## III. THE ALJ'S FINDINGS

17

18      The ALJ found Plaintiff has the severe impairments of generalized anxiety disorder,

19 social anxiety with a reported history of autism, and depressive disorder, unspecified. AR 17-18.

20      The ALJ found that the combination of Plaintiff's impairments do not meet or equal any

21 Listed Impairment. AR 19-20. The ALJ found that Plaintiff has the residual functional capacity

22 (RFC) to perform a full range of work at all exertional levels, limited by no exposure to noise

23

24

greater than moderate; unskilled, simple tasks consistent with jobs having an SVP of 2 or less in a work environment without conveyor belt-paced production requirements and where standard work breaks are provided; occasional contact with the public but not as an essential element of the job; occasional contact with co-workers but no tandem work; and occasional, routine workplace changes. AR 20.

The ALJ found Plaintiff has no past relevant work, but that a person of Plaintiff's age, with his education, work experience, and RFC, could perform jobs existing in significant numbers in the national economy such as Commercial Cleaner, Kitchen Helper, and Router. AR 25-27.

## IV. DISCUSSION

### A. Plaintiff's Testimony

Plaintiff argues the ALJ improperly rejected his testimony.

1. The ALJ's Findings

The ALJ summarized Plaintiff's testimony as follows:

The claimant alleges that his impairments affect **lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, seeing, remembering information, completing tasks, concentrating, understanding, following instructions, using his hands, and getting along with others** (12E/6). He alleges that he can lift 10 to 15 pounds and can walk a couple of blocks before needing to rest for an hour (12E/6). He asserts that he is slow and easily overwhelmed (12E/1). **He contends that he needs help shaving and picking out clothes and needs reminders to clean his living space and to cut his food into small pieces** (12E/2). He alleges that he cannot handle a checkbook properly and has overdrawn his accounts (12E/4). He contends that **he needs to be accompanied when he goes places to help him "cope with other people being around"** (12E/5). He alleges that the does not handle stress or changes in routine well and that he is afraid of the dark (12E/7).

AR 21 (emphasis added).

1   The ALJ rejected much of Plaintiff's testimony by outlining a number of "inconsistencies

2   between [Plaintiff's] allegations, his reports to examiners and providers", and lack of

3   corroborating medical evidence to support his alleged medical impairments, or the degree to

4   which his medically determinable impairments limit his functional ability. *Id*.

5       *a.  Autism and Traumatic Brain Injury*

6   Plaintiff alleged he suffers from both autism and a traumatic brain injury. AR 274, 277,

7   437. The ALJ found "the record does not mention a traumatic brain injury, and it shows autism

8   as part of the claimant's medical history but does not show when, if, or by whom it might have

9   been diagnosed (e.g., 6F, 10F)." AR 19. Therefore, the ALJ determined that autism and

10  traumatic brain injury are not among Plaintiff's severe impairments.[1] *Id*.

11      *b.  Anxiety*

12  The ALJ found that the objective medical evidence did not support Plaintiff's allegations

13  regarding the impact anxiety has on his functional ability. AR 21-22. The ALJ noted that upon

14  meeting the consultative psychological examiner Plaintiff "held his head and breathed heavily

15  and his voice shook" when she told him he would be interviewed without his mother in the room.

16  *Id*. (citing AR 440, 526-527). However, the ALJ found that Plaintiff did not display this sort of

17  behavior at his consultative physical examination or with his own medical providers, or in any

18

19

---

20  [1] Step Two of the administration's evaluation process requires the ALJ to determine whether the claimant
    "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.
21  1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). An impairment is "not severe" if
    it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).
22  "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking,
    standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1290 (quoting 20
23  C.F.R. § 140.1521(b)). An impairment or combination of impairments "can be found 'not severe' only if the
    evidence establishes a slight abnormality having 'no more than a minimal effect on an individual['s] ability to
24  work.'" *Id*. (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling 85-28)).

1  other documented instance. *Id*. (citing AR 22, 374-375, 379, 382, 386, 391, 458, 463, 467, 471,

2  526, 539, 542).

3       The ALJ further noted that Plaintiff does not attend counseling or any kind of mental-

4  health therapy. *Id*. And while Plaintiff did have a prescription for psychotropic medication from

5  his primary care provider, the ALJ found no reports of concerning symptoms of anxiety or

6  depression, and that Plaintiff only presented on a select-few occasions as anxious or with "a flat

7  affect" (AR 373, 375, 379, 471), but usually had a stable or good mood and affect (AR 373, 375,

8  386**,** 463, 467, 471, 483, 494) and was oriented with intact memory and judgment and no

9  evidence of anxiety, depression, or agitation (AR 382, 386, 391, 463, 475, 483, 494, 542). AR

10  22.

11       Although the ALJ found Plaintiff's IEP pre-dated the time he alleges he became disabled,

12  the ALJ nevertheless noted that it indicated Plaintiff sometimes struggled with feeling anxious or

13  uncomfortable but was generally pleasant and organized and enjoyed socializing with his peers,

14  advocating for himself, and working in groups. AR 21-22 (citing AR 313, 373, 377, 390, 440,

15  466, 525).

16       Finally, the ALJ found Plaintiff's activities of daily living (including driving, shopping,

17  preparing simple meals, sweeping, mopping, vacuuming, doing laundry, and cleaning toilets)

18  together with Plaintiff's long-standing part-time work as a food-delivery driver (which the ALJ

19  found requires frequently getting into and out of his vehicle and carrying multiple food boxes

20  and bags) belied Plaintiff's alleged limitations. AR 22 (citing AR 17-18, 22, 38, 212, 276-279,

21  390, 373, 377, 390, 440, 466, 525).

22       *c. Degenerative Disc Disease*

23       The ALJ determined that Plaintiff did not have severe degenerative disc disease. *AR 18.*

24  Imaging was largely unremarkable, revealing only mild to moderate degeneration in Plaintiff's

lower back. *Id*. (citing AR 523-524). Also, the ALJ found Plaintiff's consultative physical examination was entirely unremarkable and yielded no relevant limitations. AR 18 (citing 527).

### d. Sleep

The ALJ noted that Plaintiff told the consultative psychological evaluator he had trouble falling asleep and staying asleep "most nights" even though Plaintiff rarely mentioned sleeping issues to his medical treatment providers AR 21, 24 (citing AR 373, 390, 408-409, 438).

### e. Obesity/ Diet

The ALJ found Plaintiff's report to the consultative psychological evaluator that he did not get hungry and only ate once a day was inconsistent with the record showing Plaintiff has a binge-eating disorder and is obese. AR 21, 24 (citing AR 346, 380-381, 438, 471, 485).

### f. Migraines

The ALJ discredited Plaintiff's testimony that he experiences two to three migraines per week. AR 22. The ALJ noted that in August 2019 Plaintiff told his health-care provider he had "moderate headaches which come infrequently", and in December 2019 Plaintiff said his headaches were stable or well-controlled with medication. AR 22 (citing AR 41, 408, 459, 461).

### 2. Testimonial Evidence Standard

"The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted). "If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

1    When assessing a claimant's credibility the ALJ may consider "ordinary techniques of

2   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

3   symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

4   1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent

5   with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294,

6   1297 (9th Cir. 1998).

7    However, affirmative evidence of symptom magnification, or malingering, relieves an

8   ALJ from the burden of providing specific, clear, and convincing reasons for discounting a

9   claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r*

10   *of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235

11   (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

12   Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d

13   639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination.

14   *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a

15   credibility determination where that determination is based on contradictory or ambiguous

16   evidence. *Id*. at 579.

17   3.   Analysis

18    Plaintiff argues the ALJ's failure to properly evaluate the medical evidence tainted his

19   evaluation of Plaintiff's testimony. Dkt. 14 at 10. For the reasons discussed under the medical

20   evidence section, below, the Court finds no merit to this argument.

21    Plaintiff next contends the alleged "inconsistencies" identified by the ALJ were not

22   supported by substantial evidence, nor "meaningfully" inconsistent. *Id*. at 10. Plaintiff states, for

23   example, that the "pain behaviors" Plaintiff displayed during his consultative psychological

24   evaluation with Jasmyne Lyons, PMHNP, but not during his consultative physical evaluation,

1  can be logically explained by the passage of time as well as the fact he had been seeing a

2  chiropractor. *Id.* at 5, 10. The Court finds this argument speculative at best, in the face of

3  substantial evidence documented by the ALJ of an array of inconsistencies in Plaintiff's

4  subjective reporting regarding all of his alleged impairments—not just his back pain—as

5  outlined above.

6       Next, Plaintiff contends the ALJ's finding that Plaintiff's ability to work part-time as a

7  food delivery driver is not a clear and convincing reason to reject his allegedly disabling "fear of

8  being around strangers" because that job does not involve frequent interaction with the public—

9  "he simply hands them the food which they already paid for online." Dkt. 14 at 11. The Court

10  concurs with Defendant that this work is a clear and convincing reason to find Plaintiff less than

11  fully credible, as found by Rita Flanagan, Ph.D., discussed below, who opined that this work

12  demonstrates social abilities. Dkt. 16 at 7-8 (citing AR 23, 102-03, 124-25).

13       Plaintiff also claims "all of his work attempts have been unsuccessful" so the ALJ should

14  not have discredited his testimony "about the limitations that have contributed to his inability to

15  hold and keep a job". Dkt. 14 at 11. However, as Defendant correctly responds, Plaintiff himself

16  testified at his hearing before the ALJ that he *still* works for Door Dash as a food-deliver driver.

17  AR 38. Therefore, the Court finds no merit to this argument.

18       Plaintiff next argues that "contrary to the ALJ's analysis, the fact that [Plaintiff's] IEP

19  showed variability in his ability to interact with others does not prove that he could successfully

20  interact with other employees in a competitive work environment." Dkt. 14 at 11 (citing AR 22).

21  This is a mischaracterization of the ALJ's finding. The ALJ found that Plaintiff's IEP

22  undermined his testimony that he suffers from disabling anxiety and fear of being around

23

24

1  strangers, as it "indicated that he could be rude when he was anxious or uncomfortable but that

2  he was generally pleasant and organized, enjoyed socializing with his peers, advocated for

3  himself and others, and worked well in groups, and transitions well to changes he was

4  aware of (1F/6)." AR 22. The Court finds this was a clear and convincing reason supported by

5  substantial evidence to discredit Plaintiff's testimony.

6      Next, the Court finds no merit to Plaintiff's argument that the ALJ rejected his testimony

7  solely based on lack of corroborating objective medical evidence.[2] Dkt. 14 at 11. As outlined

8  above, the ALJ complied with these rules by finding, in the case of Plaintiff's alleged

9  impairments of autism and traumatic brain injury, that Plaintiff did not produce any objective

10 medical evidence to support finding he suffered from these impairments, as discussed further

11 below. Notably, Plaintiff does not challenge the ALJ's finding that he does not have a traumatic

12 brain injury. *See generally*, Dkt. 14.

13     With respect to Plaintiff's alleged impairments for which Plaintiff did produce objective

14 medical evidence, the ALJ found inconsistencies between Plaintiff's alleged limitations and his

15 activities of daily living, inconsistencies between his alleged limitations and his part-time work

16 as a food delivery person, and conservative or no medical treatment for many of his alleged

17 medical impairments, undermined the degree of impairment Plaintiff alleged. The Court finds

18 these were clear and convincing reasons for rejecting Plaintiff's testimony.

19

20

21

22

23

24

---

[2] "The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted). Once the claimant produces medical evidence of an underlying impairment, an ALJ may not discredit his testimony as to subjective symptoms merely because they are unsupported by objective evidence. *See*, *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995). Instead, "for the ALJ to reject the claimant's complaints, he or she must provide specific, cogent reasons for the disbelief." *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

1    Next, Plaintiff states, without more, that "the ALJ fails to acknowledge that autism is not

2    a curable disease process." Dkt. 14 at 11. The Court perceives no argument here, but notes that

3    the ALJ's finding that autism was not one of Plaintiff's medically determinable impairments is

4    discussed below. *See e.g.*, *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012) ("We

5    review only issues which are argued specifically and distinctly in a party's opening

6    brief")(internal quotations and citations omitted).

7        Next Plaintiff argues it was legally erroneous for the ALJ to use the fact Plaintiff does not

8    attend counseling or engage in mental-health therapy against him. Dkt. 14 at 11-12. However,

9    the amount, type, and effectiveness of treatment are important considerations when weighing a

10   claimant's allegations. 20 C.F.R. §§ 404.1529(c)(3)-(c)(4), 416.929(c)(3)-(c)(4); SSR 16-3p at

11   *8. "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony

12   regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Thus

13   the ALJ properly found the absence of any evidence of mental health counseling in Plaintiff's

14   record, and only a prescription from his primary care provider for depression medication,

15   detracted from Plaintiff's claim of disabling anxiety. AR 373, 376, 381, 384, 455, 460, 535.

16   Moreover, Plaintiff has not pointed to any evidence that his failure to undergo additional

17   treatment for his allegedly disabling anxiety "was attributable to [his] mental impairment."

18   *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

19       Finally, Plaintiff argues the ALJ erroneously determined that he "engaged in activities

20   that are consistent with the ability to perform work in a full range of physical exertion and some

21   moderate mental limitations, as provided above." Dkt. 14 at 12 (citing AR 22). This finding is

22   not based on substantial evidence, according to Plaintiff, because his activities do not meet "the

23   threshold for transferable work skills," or show he could perform any type of full-time

24

1   competitive work on a sustained basis. Dkt. 14 at 12. To the contrary, the Court concurs with

2   Defendant that activities similar to Plaintiff's "tend to suggest that the claimant might still be

3   capable of performing the basic demands of competitive, remunerative, unskilled work on a

4   sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). Moreover,

5   "play[ing] video games and watch[ing] television" undermine mental complaints. *Ahearn v.*

6   *Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

7       In sum, the Court finds the ALJ's assessment of Plaintiff's testimony was based on clear

8   and convincing reasons supported by substantial evidence..

9   **B. Individual Education Plan**

10      As stated above, the ALJ did not find that autism was one of Plaintiff's severe

11  impairments. Plaintiff argues, however, that his individual education plan, or IEP, from his

12  senior year of high school[3] proves he was diagnosed with autism in 2007. Dkt. 14 at 7. Plaintiff

13  further contends that if the ALJ felt the IEP was not sufficient "proof" that autism was one of his

14  severe impairments the ALJ had a duty to further develop the record, such as by obtaining

15  historical medical records from 2007 or by ordering a psychological evaluation to determine if

16  Plaintiff is Autistic. *Id*. Plaintiff cites *Sims v. Apfel* to buttress this argument. 530 U.S. 103, 111

17  (2000)("[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and

18  against granting benefits")(internal citations omitted).

19      Defendant responds that the IEP does not contain any "medically acceptable clinical and

20  laboratory diagnostic" evidence created by "an acceptable medical source", and therefore the

21  ALJ correctly determined that it does not prove Plaintiff has autism. Dkt. 16 at 3 (citing 20

22

23  _____

24  [3] Defendant also points out that the IEP pre-dates Plaintiff's alleged disability onset date by many months. Dkt. 16 at 3 (citing AR 308). Plaintiff does not address this issue.

1  C.F.R. §§ 404.1521, 416.921). And since the IEP does not contain any probative medical

2  evidence, the ALJ did not even need to discuss it in Defendant's view. Dkt. 16 at 12 (citing

3  *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984)).

4      The Court concurs with Defendant. Plaintiff bears the burden of proving he is disabled

5  by furnishing the ALJ with evidence that relates to his allegations of disability, or information

6  about where to obtain such evidence. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). The ALJ

7  executed this duty by contacting and receiving evidence from every medical source Plaintiff told

8  the ALJ about. *Id.* (citing AR 246-247, 267, 287, 297, 362, 369, 402, 445, 452, 512, 518, 528,

9  534, 543). Plaintiff does not argue, nor does the Court find any reason to conclude, that Plaintiff

10  provided the contact information for an "acceptable medical source" that diagnosed Plaintiff with

11  autism.

12      Moreover, as Defendant points out, the state agency did order and pay for Plaintiff to

13  undergo a consultative psychiatric examination. Dkt. 16 at 4 (citing AR 437-444). The Court

14  finds the ALJ's duty to develop the record more extensively was not triggered because the ALJ

15  did not detect an unresolvable ambiguity. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

16  2001)(Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for

17  proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry".).

18      In sum, the lack of objective medical evidence to support a conclusion that autism was

19  one of Plaintiff's medically determinable impairments was a legally sufficient reason for the ALJ

20  to find that autism was not a medically determinable impairment.

21  **C. Medical Evidence**

22      Plaintiff argues the ALJ wrongly rejected some of the medical evidence.

23

24

1    1. Medical Evidence Regulations

2          Under the revised regulations, ALJs "will not defer or give any specific evidentiary

3    weight, including controlling weight, to any medical opinion(s) or prior administrative medical

4    finding(s) …". 20 C.F.R. §§ 416.1520c(1) and 416.920c(a). Instead, ALJs must consider every

5    medical opinion or prior administrative medical findings in the record and evaluate each

6    opinion's persuasiveness using a list of factors listed. *See*, 20 C.F.R. §§ 416. 1520(c)(a) and

7    416.920c(a). The two most important factors are the opinion's "supportability" and

8    "consistency." *Id*. ALJs must explain "how [they] considered the supportability and consistency

9    factors for a medical source's medical opinions or prior administrative medical findings in [their]

10   . . . decision." 20 C.F.R. §§ 416.1520c(b)(2) and 416.920c(b)(2).

11         "Supportability means the extent to which a medical source supports the medical opinion

12   by explaining the 'relevant … objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785,

13   791-2 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)); *see also*, 20 C.F.R. § 416.920c(c)(1).

14   "Consistency means the extent to which a medical opinion is 'consistent … with the evidence

15   from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. §

16   404.1520c(c)(2)); *see also*, 20 C.F.R. § 416.920c(c)(2).

17   2. Analysis

18         At the outset, the Court will address Plaintiff's global assertion that the ALJ gave more

19   "weight to the non-examiners' opinions" than to the opinions of examining physicians. Dkt. 14 at

20   9. Plaintiff does not point to any evidence upon which to conclude that the ALJ improperly

21   favored evidence from some sources more than others. Instead, the ALJ addressed the

22   supportability and consistency factors for each probative medical source opinion, consistent with

23   applicable regulations, as discussed below. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

24

1

*a.   Jasmyne Lyons, PMHNP*

2
Psychiatric Mental Health Nurse Practitioner Jasmyne Lyons (Lyons) performed a

3
consultative examination of Plaintiff in February 2020. AR 437-444. Lyons diagnosed Plaintiff

4
with generalized anxiety disorder, social anxiety, and depressive disorder, and opined that he had

5
"fair" ability to understand, remember, and carry out simple instructions, and "poor" ability to

6
handle complex instructions, sustain concentration and persistence, to interact with others

7
including co-workers, supervisors and the public, adapt to the usual stresses of the workplace,

8
and to even attend work regularly. AR 442-443.

9
The ALJ found this opinion unpersuasive. AR 24. The ALJ stated that it was unsupported

10
as it appeared Lyons largely credited Plaintiffs statements and presentation during her one-time

11
examination, but Plaintiff's statements were "inconsistent with the record and with statement she

12
made to his medical providers." *Id*. Lyons was unaware of these inconsistences likely because

13
she did not have the record reviewed by the ALJ and the state agency consultants. *Id*. In fact, the

14
ALJ found the only documentary evidence Lyons reviewed was "a single 'medication

15
management follow up' for which she did not provide a date, and [Plaintiff's IEP] from before

16
the relevant period." *Id*.

17
Plaintiff argues Lyons "only reviewed a limited amount of documentary information"

18
because Plaintiff's "file" document does not include much, but in any event the IEP does support

19
Lyon's opinion. Dkt. 14 at 4. This argument fails to undermine the ALJ's supportability finding;

20
the ALJ accurately concluded that the IEP is not probative medical evidence and it pre-dates

21
Plaintiff's alleged disability onset date. *Cf.*, *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

22
1995) (the ALJ properly rejected a physician's retrospective assessment that "was not

23
substantiated by medical evidence relevant to the period in question").

24

1    Next Plaintiff contends Lyons's opinion was not "largely" based on Plaintiff's subjective

2    reporting, and even if it was the ALJ erroneously determined that Plaintiff's subjective reporting

3    was unreliable and inconsistent. Dkt. 14 at 4. This Court has already determined, above, that the

4    ALJ provided many clear and convincing reasons to finding Plaintiff's subject reporting was

5    inconsistent across the board, and therefore need not address further arguments premised upon

6    the supposition that Plaintiff is a reliable reporter. Having reviewed Lyon's report, the Court

7    further finds no merit to Plaintiff's argument that Lyons's opinions were principally based upon

8    "objective clinical observations" rather than Plaintiff's own statements. *See*, AR 437-443. Lyons

9    prognosticates, for example, even with "adequate treatment for his psychiatric concerns over the

10   next 12 months [Plaintiff's] prognosis would be poor" as he "is currently receiving treatment and

11   his symptoms still pose a great interference." AR 442. Yet, as the ALJ stated, given the only

12   documents Lyons reviewed were Plaintiff's IEP and an undated "medication management"

13   record containing unspecified information, Lyons does appear to have credited Plaintiff's claims

14   that he suffers from autism and Depression and "unmanaged anxiety" that resulted in Plaintiff

15   being "let go from work due to him not being able to maintain adequate pace … and becoming

16   overwhelmed"—information Lyons could not have garnered from anywhere but Plaintiff's own

17   statements. AR 443.

18   In sum, the Court finds the ALJ's assessment of Lyons' opinion was free of legal error

19   and supported by substantial evidence.

20   *b. Psychological Opinion Evidence*

21   On February 26, 2020 Sharon Underwood, Ph.D. (Underwood) opined that Plaintiff was

22   markedly limited in his ability to interact with others, as well as moderately limited in a number

23   of other functional areas such as: his ability to understand, remember, or apply information;

24   concentrate, persist, or maintain pace; adapt or manage oneself; work in coordination with or in

1   proximity to others without being distracted by them, and; interact appropriately with the general

2   public. AR 61, 65-66.

3          The ALJ found Underwood's opinion "unpersuasive" because "[i]t is inconsistent with

4   the overall record and the claimant's demonstrated functioning and is unsupported by treatment

5   notes, exam findings, and other objective evidence." AR 23. The ALJ's finding was bolstered by

6   reviewing physician Rita Flanagan, Ph.D. (Flanagan), who noted that Plaintiff's food-delivery

7   work demonstrated a greater ability to interact with the general public than Underwood assessed.

8   AR 23, 97, 101-03, 124-125.

9          Plaintiff argues the ALJ's analysis is not supported by substantial evidence because it is

10   based on the flawed finding that Plaintiff's part-time food-delivery work contradicts his alleged

11   functional limitations, and Flanagan's opinion is not consistent with Plaintiff's overall record and

12   demonstrated functioning. Dkt. 14 at 8-9.

13          Having already found, above, that the ALJ properly rejected Plaintiff's testimony, the

14   Court need not address further argument premised upon contrary assumptions. Moreover, the

15   ALJ's finding that Plaintiff's activities of daily living and part-time work as a food-delivery

16   driver were incongruous with his alleged limitations, together with Plaintiff's inconsistent

17   reporting, conservative or no treatment for several of his alleged impairments, and lack of any

18   objective medical evidence in the case of some of his alleged impairments constitute substantial

19   evidence in support of the ALJ's rejection of Underwood's opinion. Accordingly, the Court finds

20   no merit to Plaintiff's attack on the ALJ's assessment of the psychological opinion evidence.

21          *c.  Physical Opinion Evidence*

22          On March 9, 2020 state-agency medical consultant Norman Staley, M.D. (Staley), opined

23   that Plaintiff could perform light work, and: (1) could lift and/or carry 20 pounds occasionally

24

1   and 10 pounds frequently; (2) could stand and/or walk for about six-hours in an eight-hour

2   workday; and, (3) could sit for about six-hours in an eight-hour workday. AR 64, 68.

3       The ALJ rejected Staley's opinion as "inconsistent with the overall record and the

4   claimant's demonstrated functioning" and "unsupported by treatment notes, exam findings, or

5   other objective evidence from the record." AR 18. The ALJ further explained:

6       X-rays of the claimant's lumbar spine were **largely unremarkable** (12F/3). He
        presented for a consultative examination exam in **no acute distress** and exhibited
7       **normal range of motion, full strength, a normal gait, and good balance** (12F/5).
        He drives; shops in stores; prepares simple meals; sweeps, mops, and vacuums
8       floors; does laundry; and cleans toilets (12E/3-4, 6F/4). For about two years, he has
        been **working as a food-delivery driver**, which requires **frequently getting into**
9       **and out of his vehicle and carrying** multiple food boxes and bags.

10  AR 18 (emphasis added).

11      On February 19, 2021 Jaime Yeverino-Flores, M.D. (Yeverino-Flores), a state-agency

12  medical consultant, performed a physical evaluation of Plaintiff including imaging, and

13  diagnosed him with neck and low back pain, but no physical limitations. AR 526-527. Then,

14  upon reconsideration of Plaintiff's claim, state-agency medical consultant Drew Stevick, M.D.

15  (Stevick), also opined that Plaintiff had no medically determinable physical impairments. AR 95-

16  96, 117-118.

17      The ALJ found Yeverino-Flores and Stevick's opinions were both consistent and

18  supported by the objective medical evidence and Plaintiff's activities. AR 18. The ALJ also

19  noted that Stevick's opinion is "persuasive" because it is "consistent with and supported by the

20  objective medical evidence and the claimant's demonstrated functioning." *Id*.

21      Plaintiff does not quibble with the ALJ's assessment of Yeverino-Flores or Stevick, but

22  argues the ALJ's rejection of Staley in the first place was not supported by substantial evidence

23  as none of Plaintiff's activities or testimony actually contradict Staley, and Plaintiff's imaging

24

1    actually supports Staley. Dkt. 14 at 9. Here again, the Court finds no merit to this argument as it

2    is premised upon the already rejected assumption that Plaintiff's testimony was credible, and is

3    not supported by the record as a whole, including but not limited to unremarkable imaging of

4    Plaintiff's lumbar spine. Plaintiff's insistence that his unremarkable imaging actually supports

5    Staley's opinion is yet another of his assertions without proof, and does not undermine the ALJ's

6    rejection of Staley's opinion, which was based upon substantial evidence.

7         In sum, the Court finds the ALJ's assessment of the physical opinion evidence was based

8    on substantial evidence and free of legal error.

9                                   **V. CONCLUSION**

10        For the foregoing reasons the Court hereby AFFIRMS Defendant's decision denying

11   benefits.

12        Dated this 22nd day of June, 2023.

13

14                                   David W. Christel
                                     United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

ORDER AFFIRMING DEFENDANT'S DECISION
DENYING BENEFITS - 18